484 A.2d 130

**COMMONWEALTH of Pennsylvania**

v.

**Robert BEBOUT, Appellant.**

Superior Court of Pennsylvania.

Submitted March 26, 1984.

Filed Nov. 9, 1984.

276

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, President Judge, and BROSKY and MONTGOMERY, JJ.

BROSKY, Judge:

The sole issue before us in this appeal is whether appellant, who was a juvenile at the time of his arrest, was denied the right to have access to an informed interested adult prior to making an incriminating statement. We affirm.

Appellant's conviction stemmed from the sexual assault and subsequent strangulation and beating of a seven year old boy whose nude body was found on May 15, 1981 in the Saw Mill Run Creek in the West End neighborhood of Pittsburgh. The evidence presented at the suppression hearing indicates that during the police investigation, several boys from the neighborhood were taken to the Public Safety Building in Pittsburgh where they were questioned about their activities and asked whether they had observed strangers in the vicinity on the night the crime was committed.

Among the boys questioned in this way were appellant and his two brothers who were taken to the Public Safety Building at approximately 4:00 p.m. on May 18, 1981. The boys were interviewed separately and the detective who interviewed appellant testified that shortly after the interview began he asked Mr. Bebout if he knew anything about Michael Jackson's death and he responded, "I did it." When appellant told the detective that he had killed Michael, the officer left the room and saw to it that Ginette Bebout, appellant's mother, was contacted. Mrs. Bebout was brought to the Public Safety Building and was told her and her son's rights, as was appellant. Mrs. Bebout and her son met privately and they both signed the rights waiver form. Mr. Bebout then made a statement in the presence of his mother.

Appellant argues that his waiver was not voluntary because it was obtained in violation of the "interested adult" rule. That rule provided that no juvenile could waive his right to remain silent and his right to the assistance of counsel without the opportunity to consult with an adult,

who is informed of the juvenile's rights and is interested in the welfare of the juvenile.[1] Appellant claims that he did not have the opportunity to consult with an interested adult because his mother was not in fact interested in his welfare and seeks to prove this by use of "after discovered" evidence.

The current standard for evaluating the voluntariness of confessions made by juveniles is the result of a recent evolution in the area of criminal justice. The interested adult rule, which came to be known as the *McCutchen* Rule, established a *per se* rule that a juvenile is incompetent to waive his constitutional rights without access to an interested and informed adult. The *McCutchen* Rule was adopted as a prophylactic measure to ensure that the requirements of due process are satisfied. In *Commonwealth v. Smith,* 472 Pa. 492, 372 A.2d 797 (1977) the Pennsylvania Supreme Court stated:

> ... [D]ue process requires that a waiver by a youthful offender is effectuated only when it has been shown that a minor comprehended the full significance of the panoply of rights that protects him during custodial interrogation. *Id.* at 799.

The *per se McCutchen* Rule was overruled by the Supreme Court of Pennsylvania in *Commonwealth v. Christmas,* 502 Pa. 218, 465 A.2d 989 (1983) which held:

> ... we believe that protection of juveniles against the innate disadvantages associated with the immaturity of most youth may well be achieved in a manner that affords more adequate weight to the interests of society, and of justice, while avoiding *per se* applications of the interested and informed adult rule that serve, in an overly protective and unreasonably paternalistic fashion, to provide means for juvenile offenders to secure suppression

---

1. The interested adult rule was established by our Supreme Court's decisions in *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); and *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975).

of confessions in fact given in a knowing and voluntary manner.

*Id.*, 502 Pa. at 222, 223, 465 A.2d 989.

In an effort to preserve the requisite measure of protection against admission of confessions derived as a result of the immaturity, lack of understanding, and susceptibility to influence of youth, the Court announced that there shall exist a presumption that a statement derived in the absence of an opportunity for consultation with an interested and informed adult is inadmissible. That presumption shall be regarded as rebutted where the evidence *clearly demonstrates* that the statement obtained from the juvenile was in fact made knowingly, intelligently and voluntarily. *Id.*

In the case of *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984), the rebuttable presumption test applied in *Christmas* was replaced by a "totality of the circumstances" analysis as the current standard for evaluating the voluntariness of confessions. In *Williams*, the Supreme Court of Pennsylvania stated:

> The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

*Id.*, 504 Pa. at 521, 475 A.2d at 1288.

In the instant case, appellant contends that we should suppress the admissions made by him on the basis of an application of the *per se McCutchen* Rule. Although the *per se* rule is no longer recognized in Pennsylvania, the absence of the juvenile's right to confer with an interested adult will be viewed as an important factor among the totality of circumstances in determining if the waiver was

voluntary. For this reason, we will address appellant's claim.

In *Commonwealth v. Rochester*, 305 Pa. 364, 451 A.2d 690 (1982), our Supreme Court held that three factors must be present in order to find that a juvenile had been accorded his right to consult with an interested adult. They are: (1) the juvenile must be given the opportunity to consult with an adult; (2) the adult must be one who is genuinely interested in the welfare of the accused juvenile, and, (3) the interested adult must be informed and aware of those Fifth and Sixth Amendment rights guaranteed a juvenile.

Appellant concedes that the first requirement was met but argues that the second and third factors were not satisfied.

As to the third requirement, we find that the suppression testimony clearly refutes appellant's claim. Although Mrs. Bebout indicated that she met with her son first without having been told his rights, she then related that prior to his making the statement to the officers, both she and her son were advised of his rights. Furthermore, the detective who interviewed appellant testified that in fact Mrs. Bebout was told of her son's rights prior to her first meeting with him.

It is clear that appellant and his mother were advised of his rights prior to his incriminating himself. Even appellant's counsel said at the conclusion of the suppression hearing testimony, "I don't have any problem, frankly, agreeing to the state of the record that it's not essentially that we are withdrawing, *but based on the mother's testimony, clearly, he was warned adequately.*"

As to the second requirement, the suppression court found that the presence of appellant's mother provided the requisite access to an adult who is interested in the welfare of the accused juvenile. Appellant does not argue with the suppression court's findings based on the evidence adduced at the suppression hearing. Instead, appellant now argues that the trial testimony of a psychiatrist indicates that his

mother was not genuinely interested in him and that based on this "after discovered" evidence, we should find that his *Miranda* rights were violated. We disagree.

■ It is well settled in this Commonwealth that a new trial is not warranted on the basis of after discovered evidence unless it could not have been discovered until after the trial despite reasonable diligence, is not used merely for cumulative or impeachment purposes, and is of such a nature that it would compel a different outcome. *Commonwealth v. Scott,* 503 Pa. 624, 470 A.2d 91 (1983).

The "after discovered" evidence to which appellant refers is contained in the testimony of a psychiatrist who said that appellant failed to mature because of inadequacies in his home life including his mother's alcoholism and her failure to censor his use of alcohol and drugs. Given the deficiencies outlined by the psychiatrist, appellant claims that his mother was not "interested" in him.

■ At the outset we note that even assuming the truth of the allegations about his mother, the evidence was surely discoverable prior to trial. It is not a psychiatric evaluation on which appellant seeks to rely, but on evidence that his mother did not care for him adequately. We will not find such evidence in the category of evidence that "could not have been discoverable ... with due diligence". Appellant did not allege his mother's inadequacies at the suppression stage and we will not permit him to raise the issue at this point in the proceedings. See Pa.R.Crim.Proc. 306(e); 323(d). We therefore reject appellant's argument that he was denied access to an interested adult.

■ Furthermore, our application of the "totality of circumstances" test used in *Williams* leads us to the conclusion that appellant's statements were made voluntarily.

In *Commonwealth v. Moses,* 446 Pa. 350, 287 A.2d 131 (1971), the totality of circumstances test was used to evalu-

ate the confessions of a 16 year old, 10th grade student of average intelligence. In *Moses*, our Supreme Court stated:

> ... where the accused is of tender years, the attending circumstances must be scrutinized with special care. However, to declare as matter of law that a 16 year old, regardless of maturity and intelligence is unable to fully understand when he is informed of his constitutional rights and may not by himself waive his right to counsel before being questioned by the police would be to ignore reality and the sophistication of the average 16 year old in these days and times.

*Id.*, 446 Pa. at 354, 287 A.2d 131.

In the instant case, appellant was 15 at the time of his arrest and had completed the 9th grade. The evidence presented by the Commonwealth showed that he was warned of his rights. In fact appellant's counsel stated at the hearing: "I don't have any problem, frankly, agreeing to the state of the record that it's not essentially that we are withdrawing, but based on the mother's testimony, clearly, he was warned adequately."

See also, *Commonwealth v. Jones*, 457 Pa. 423, 430, 322 A.2d 119, 124 (1974), in which the Supreme Court of Pennsylvania stated: "[there is] ... no simple litmus paper test for determining whether a confession is involuntary. Courts must consider the totality of circumstances. The burden is on the Commonwealth to show that the accused's will is not overborne, either through physical or mental pressure and that the statement issued from free choice." In the present case, there is a total absence of coercive force and nothing to suggest that the appellant's confession was the product of illegal police conduct. *Id.*, 457 Pa. at 430, 322 A.2d at 124.

From all of the relevant facts and circumstances appearing in this record, we are convinced that considering the totality of the circumstances, appellant's confession was knowing, intelligent, and voluntarily made.

Affirmed.