515 A.2d 1382

**COMMONWEALTH of Pennsylvania**

v.

**James GRIFFIN, Appellant.**

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed Sept. 29, 1986.

---

Michael J. Healey, Pittsburgh, for appellant.

Sean K. Code, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before ROWLEY, McEWEN and HESTER, JJ.

HESTER, Judge:

In this appeal from judgment of sentence, a mandatory life term, entered upon appellant's conviction of first degree murder by a jury, appellant raises numerous issues alleging trial error and ineffectiveness of trial counsel. We hold that no reversible error occurred, and affirm.

Appellant was one of eight men who participated in a conspiracy which led to the contract killing of Norman McGregor on December 14, 1978. The events surrounding the conspiracy and murder are summarized in *Commonwealth v. Watson*, 355 Pa.Super. 160, 512 A.2d 1261 (1986). Appellant was one of the intermediaries between Thomas Skelton, who paid for the murder, and James Watson, who shot the victim.

Following the confessions of three conspirators, appellant was brought to trial on February 21, 1984, on a general charge of criminal homicide. The jury returned a verdict of guilty of murder in the first degree and imposed a life sentence. Appellant retained new counsel following his trial who presented post-verdict motions which were denied. Appellant appealed from the judgment of sentence entered on May 20, 1985.

Appellant raises five issues. He argues that: 1) trial counsel was ineffective in failing to object to deliberate references to appellant's past, by Commonwealth witnesses and by the prosecutor, from which the jury could only have inferred that he had engaged in prior criminal activity; 2) the trial court erred in failing to instruct the jury on (a) the statutory exception to accomplice liability, (b) voluntary manslaughter, and (c) criminal solicitation; 3) the trial court erred in permitting the Commonwealth to question prospective jurors regarding their attitude toward the death penalty and in allowing the Commonwealth to challenge for cause any person irrevocably committed to vote against the death penalty; 4) trial counsel was ineffective for failing to produce a necessary witness who could have impeached the credibility of a Commonwealth witness; and 5) the evidence was insufficient as a matter of law to support a jury verdict finding appellant guilty of first degree murder beyond a reasonable doubt. We will address the issues seriatum.

In the first issue, appellant presents a dual argument. He claims, first, that references to his past inevitably implied prior criminal behavior and were so prejudicial they constituted reversible error, and second, that trial counsel was ineffective for failing to object to the references. Appellant objects to three statements, elicited on direct examination of Commonwealth witnesses, which allegedly implied prior criminal behavior by appellant, as well as to a portion of the prosecutor's closing argument.

■ The first challenged testimony was given by Charles Kellington, who testified that appellant and co-conspirator Gerald Walls recommended that Robert Bricker be solicited to kill the victim. The prosecutor asked Kellington whether appellant and Walls were suggesting Bricker was "qualified to do this sort of thing," and Kellington responded, "Yes. He told me about a murder that he committed, a guy named Mitch." Reproduced record (R.) at 205a. Appellant argues that this testimony implicates him in the murder of Mitch. We do not agree. The clear import of the testimony is that Bricker was qualified to kill the victim because Bricker had

murdered Mitch, not that appellant or Walls had been involved in the murder of Mitch.

■ Appellant argues that testimony by Commonwealth witnesses Gerald Walls and Charles Rossi implied that they had met appellant in prison, and further, that appellant must have been in prison due to a prior criminal conviction. Appellant relies on *Commonwealth v. Bricker,* 506 Pa. 571, 487 A.2d 346 (1985), to support his argument. Although the parties in *Bricker* were the same ones involved in this conspiracy and though the testimony challenged by appellant is indeed similar to that which was condemned in *Bricker,* we hold that it is sufficiently distinguishable to warrant a different result. We hold that the testimony in appellant's trial did not create the inevitable implication of prior criminal activity which required a new trial in *Bricker, supra,* 506 Pa. at 584, 487 A.2d at 350–51.

In the *Bricker* trial, the prosecutor elicited from Charles Rossi a detailed litany of his criminal record and dates of incarceration, followed by a reiteration of the exact years Rossi had spent in prison, followed almost immediately by testimony that Rossi had known Bricker for about twenty years, which reasonably implied that the two had met during one of Rossi's lengthy periods of incarceration. Unlike the testimony in the *Bricker* case, the testimony of Walls and Rossi at appellant's trial did not so directly imply that the parties met in prison.

In the testimony of both Walls and Rossi at appellant's trial, their statements as to how long they had known appellant were substantially separated from their prior testimony as to terms of imprisonment, so that the jury was not likely to infer that appellant had been incarcerated with them. Nor had the prosecutor reemphasized the dates either Walls or Rossi had been in prison so as to underscore the impermissible implication that appellant had a prison record, as was done in the *Bricker* case. Our review of the transcript of appellant's trial convinces us that it would have taken an exceedingly astute jury to draw the inference appellant argues.

Appellant's final allegation pertaining to implications of prior criminal activity relates to a portion of the prosecutor's closing argument. We reproduce the challenged statements in full, together with the sidebar conference which followed.

[MR. STEELE, Assistant District Attorney:] But does what they say ring true? This is a contract killing, the clubhouse, an inside circle of people who have a secret among them that they talk about and tell no one else. Who is going to know what those secrets are? Not the Boy Scout Leader in your town, but it is going to take somebody like a Kellington and somebody like a Walls to even be involved in a contract killing to even raise the subject. Kellington says that he walked into Butchie's [bar] that night and Griffin and Walls were there and they started to talk about a contract killing. And no problem. That was their kind of stuff.

And Walls says that he was the best friend. And you remember how he put it, he was with him all of the time, Jimmy Griffin, Jimmy. Snooky was with Jimmy all of the time. Best friends, closest of people, families together. They were the closest and tightest, and yet today Snooky Walls is the merchant of menace, he is the con man, he is the drug dealer, he is the murder[er], he is the thug, he is all of those things. Well, he was all of those things at that time and he was spending everyday with Jimmy Griffin. And when he came back from Florida in trouble and Jimmy told him to hang with him in Pittsburgh, he was all of those things too then. *He was a convicted murder[er] then, and a counterfeiter then, and he was a drug dealer then, and he was involved in contract murder then. And I suggest to you that Jimmy Griffin was the guy that was with him.*

Now, if that is all not correct——.

MR. LIVINGSTON: Your honor, move for mistrial.

THE COURT: Discussion on the motion?

MR. LIVINGSTON: Yes, I think we should.

[Discussion at side bar]

MR. LIVINGSTON: I move for a mistrial based upon the statement that Walls was involved in contract murders and I suggest to you that Jimmy Griffin was the guy that was with him.

MR. STEELE: This one. I talked this one [sic].

MR. LIVINGSTON: The motion is made.

MR. STEELE: Butchie's and their discussion of contract murder at Butchie's that night, that it was Walls and Kellington and Griffin. Made no reference to any other murders.

MR. LIVINGSTON: The motion is made. That's all.

THE COURT: You are not trying to imply to the jury that there are other unrelated crimes?

MR. STEELE: Absolutely not.

THE COURT: Other than the one on the trial?

MR. STEELE: I made specific reference to the conversation in Butchie's about the contract killing that Kellington walked in and immediately commenced a discussion about a contract killing.

THE COURT: That was the sense and impression that I got of it.

. . . .

Motion for mistrial denied.

R. at 497–500 (emphasis added). Appellant argues that the emphasized statements are a blatant reference to prior criminal behavior by appellant.

Although we agree that the remarks are subject to varying interpretations, we believe the statements should be construed as explained by the prosecutor during the sidebar conference and as the trial court understood them. The prosecutor referred to prior criminal behavior of the witness, Walls, a matter properly in evidence, and then referred to appellant's presence with Walls at Butchie's bar, a matter pertaining to the credibility of appellant.

■ We therefore reject appellant's claim that impermissible evidence of prior criminal behavior was admitted. We turn to his related argument that trial counsel, Mr. Living-

ston, was ineffective for failing to object to the testimony of Kellington, Walls and Rossi.

We have already concluded that the challenged testimony was admissible. Had trial counsel objected to its admission, his objections would properly have been denied. It is well established that counsel will not be deemed ineffective for failing to take baseless or meritless action. *Commonwealth v. Blagman*, 350 Pa.Super. 367, 371, 504 A.2d 883, 885 (1986); *Commonwealth v. Davis*, 331 Pa.Super. 285, 300, 480 A.2d 1035, 1043 (1984); *Commonwealth v. Green*, 315 Pa.Super. 564, 568–69, 462 A.2d 736, 738 (1983).

The second issue is appellant's claim that the trial court erred in failing to give three requested instructions to the jury. First, he requested an instruction on the following statutory exception to accomplice liability: "Unless otherwise provided by this title or by the law defining the offense, a person is not an accomplice in an offense committed by another person if . . . the offense is so defined that his conduct is inevitably incident to its commission." 18 Pa.C.S. § 306(f)(2).

Appellant fails to explain in what possible way this exception might have been applicable in his case. Proper application of section 306(f)(2) is found in *Commonwealth v. Brown*, 245 Pa.Super. 134, 369 A.2d 329 (1976). Brown was charged with hindering the apprehension of a robbery suspect. This court held that section 306(f)(2) precluded that suspect from being an accomplice in hindering her own apprehension. *Id.*, 245 Pa.Superior Ct. at 137, 369 A.2d at 331. Appellant suggests no parallel way in which he could not have been an accomplice in the murder of Norman McGregor. The trial court was therefore correct in refusing to give the requested instruction. *Commonwealth v. Carter*, 502 Pa. 433, 440, 466 A.2d 1328, 1331 (1983); *Commonwealth v. White*, 490 Pa. 179, 182, 415 A.2d 399, 400 (1980).

Appellant next challenges the trial court's refusal to instruct the jury as to the elements of voluntary man-

slaughter. Appellant's counsel requested a charge on voluntary manslaughter, R. at 450a; the court refused to give the charge, adopting the rationale of *Commonwealth v. Carter, supra* 502 Pa. at 440, 466 A.2d at 1331, that "a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." Slip op., 2/12/86, at 16. The court understood that it was extending the holding of *Carter* by refusing to give the voluntary manslaughter charge, doing so on the logic expressed in the concurring opinion of Mr. Justice McDermott, *Carter, supra,* 502 Pa. at 445–47, 466 A.2d at 1333–34. This was error, for the approach of Mr. Justice McDermott was not adopted by a majority of the court.

■ The rule is that a defendant charged with criminal homicide is entitled to a charge on "heat of passion" voluntary manslaughter, whether or not there was any evidence to support a verdict of voluntary manslaughter. *Commonwealth v. Frey,* 504 Pa. 428, 475 A.2d 700 (1984); *Commonwealth v. Carter, supra; Commonwealth v. Polimeni,* 474 Pa. 430, 378 A.2d 1189 (1977); *Commonwealth v. Cain,* 471 Pa. 140, 369 A.2d 1234 (1977). There is only one court in the state which has the authority to abrogate the rule. Although the Pennsylvania Supreme Court questioned and undermined the rule in *Frey* and *Carter,* the court expressly did *not* abandon it. *Frey, supra* 504 Pa. at 450 n. 10, 475 A.2d at 711 n. 10; *Carter, supra* 502 Pa. at 441 n. 8, 466 A.2d at 1331 n. 8.

■ Despite the error in refusing to give the "heat of passion" voluntary manslaughter instruction, we hold that appellant is not entitled to a new trial. *Commonwealth v. Green, supra* 315 Pa.Super. at 573, 462 A.2d at 742; *Commonwealth v. Weakland,* 273 Pa.Super. 361, 369, 417 A.2d 690, 694 (1979). In this case it is clear that he did not suffer prejudice from the refusal of such an instruction in view of the jury's decision to ignore their right to return a verdict of third degree murder. There is not the slightest reason to believe that the jury would have returned a manslaughter verdict out of sympathy or in recognition of factors they

may have deemed mitigating when these factors were not sufficiently compelling to cause them to elect the lesser alternative of third degree murder which was offered. *Carter, supra* 502 Pa. at 441–42 n. 9, 466 A.2d at 1332 n. 9.

■ Appellant's third challenge to the jury instructions is an argument that the court should have instructed on criminal solicitation as a lesser included offense of homicide. An instruction on a lesser included offense is required only if there is some disputed evidence concerning an element of the greater offense which is not an element of the lesser offense. *Commonwealth v. Channell,* 335 Pa.Super. 438, 484 A.2d 783 (1984). It follows that the commission of the greater offense necessarily involves the commission of the lesser offense in order for the latter to be considered a lesser included offense. *Commonwealth v. Pemberth,* 339 Pa.Super. 428, 489 A.2d 235 (1985). Clearly, appellant need not have committed criminal solicitation to have committed homicide. Consequently, criminal solicitation is not a lesser included offense of homicide.

In addition, appellant has failed to specify that evidence which satisfies the elements of both solicitation and homicide as well as that disputed evidence relating to an element of homicide which is not an element of solicitation which would have required a charge as to the lesser offense. Accordingly, the trial court properly refused to instruct the jury on the offense of criminal solicitation.

■ Appellant's third argument is that the trial court erred in permitting potential jurors to be stricken for cause if they were irrevocably committed to vote against the death penalty. The argument is definitively foreclosed by the Supreme Court's holding in *Lockhart v. McCree,* — U.S. —, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986).

Appellant's fourth argument is that trial counsel was ineffective for failing to produce a necessary witness who could have impeached the testimony of a Commonwealth witness, Kellington. Moreover, appellant alleges counsel's ineffectiveness for not cross-examining Kellington to estab-

lish an improper motive for implicating appellant in the McGregor murder scheme.

■ Appellant has failed to meet his burden of proving that the missing witness was actually available, *Commonwealth v. Ashley*, 277 Pa.Super. 287, 419 A.2d 775 (1980), prepared to cooperate and testify for the defense, *Commonwealth v. Warner*, 277 Pa.Super. 598, 419 A.2d 1312 (1980), and that because the missing witness' testimony was essential, an unfair verdict resulted. *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983).

In order to establish that trial counsel was ineffective, appellant has the burden of proving: 1) his claim is of arguable merit; 2) counsel's strategy had no reasonable basis for promoting appellant's interest; and 3) appellant was prejudiced by counsel's conduct to the extent that the result would likely have been different but for the error. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Pierce*, 345 Pa.Super. 324, 498 A.2d 423 (1985); *Commonwealth v. Garvin*, 335 Pa.Super. 560, 485 A.2d 36 (1984). The court will not consider a claim of ineffectiveness which does not satisfy the requirement of specific pleading. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth v. Garvin, supra.*

Appellant has not met his burden under the foregoing authorities. His allegation is that the missing witness should have been called to testify that she had been asked to provide a false alibi for Kellington in an unrelated case. In fact, however, she could only have testified that such a request was made by a third party rather than Kellington. R. 524a–525a. The witness' testimony would thus have been hearsay within hearsay and therefore inadmissible. *In re Estate of Donsavage*, 420 Pa. 587, 218 A.2d 112 (1966). Inasmuch as the witness' testimony would have been inadmissible, trial counsel cannot be deemed ineffective for failing to call her as an impeachment witness.

▮ Although cross-examination for the purpose of revealing the bias or improper motive of a witness permits counsel to introduce extrinsic evidence to substantiate the allegation of bias, *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985), appellant's trial counsel would have been without any extrinsic evidence to support the allegation of Kellington's bias if Kellington had denied the charge on cross-examination. Counsel cannot be deemed ineffective for failing to pursue a meritless claim, *Commonwealth v. Blagman, supra,* so we reject appellant's claims of ineffectiveness.

Appellant's final argument is that the evidence was insufficient to prove his guilt of first degree murder beyond a reasonable doubt. The standard of review for the sufficiency of the evidence is whether accepting as true all the evidence of the Commonwealth and the reasonable inferences arising therefrom, the evidence is sufficient to prove appellant's guilt beyond a reasonable doubt. *Commonwealth v. Barnes*, 310 Pa.Super. 480, 456 A.2d 1037 (1983).

The evidence presented at trial established that Kellington approached appellant and asked him if he knew anyone who would commit a contract murder. Appellant responded affirmatively and agreed with Kellington on a price of ten thousand dollars for the murder. The agreement stipulated that five thousand dollars would go to the assassin and the remaining five thousand would be divided among Kellington, Walls and appellant.

Appellant instructed Kellington to obtain the details of McGregor's movements and demanded partial payment in advance. Kellington paid appellant and Walls two thousand five hundred dollars and showed them McGregor's haunts. Appellant assured Kellington that McGregor would be taken care of. Upon appellant's direction, Walls showed Bricker where McGregor lived, worked, and socialized. Appellant then accepted a second installment payment from Kellington. Bricker later hired Rossi and Watson to help him kill McGregor after telling them that appellant had hired him and had arranged the assassination.

Rossi and Watson waited in ambush outside McGregor's home on two occasions and on a third occasion, Watson shot James Smith, having mistaken him for McGregor. After the Smith shooting, appellant informed Kellington that he would not accept less than payment in full if Kellington's principal, Thomas Skelton, wanted to cancel the murder contract. In addition, appellant threatened Kellington that Skelton could get hurt if he did not pay the balance due.

Appellant directed Walls to introduce Kellington to Bricker. Bricker and Kellington surveyed the locations frequented by McGregor, and discussed possible places for an ambush, whereupon Bricker disclosed that he had hired Rossi and Watson to help him commit the murder. While Kellington kept appellant and Walls apprised of the progress of the murder plot, Bricker and Watson began to lay in wait for McGregor.

After McGregor had been killed, Bricker called Kellington to report that the contract had been fulfilled. Thereafter, Bricker disclosed to Rossi that Watson had committed the killing. Kellington received the three thousand dollars due from Skelton and turned it over to appellant. Appellant kept eight hundred dollars for himself and instructed Kellington to deliver shares to Bricker and Walls. After Kellington paid Bricker, Bricker revealed the details of the shooting. Bricker later paid Rossi one thousand eight hundred dollars for his part in the murder contract.

In reviewing the accomplice testimony, it was reasonable for the jury to find beyond a reasonable doubt that the appellant played a critical and continuing role in the McGregor murder scheme. Because the uncorroborated testimony of an accomplice has been held sufficient to sustain a conviction, *Commonwealth v. Bradley*, 449 Pa. 19, 295 A.2d 842 (1972), we hold that the trial evidence was sufficient to support the jury's verdict that appellant was guilty beyond a reasonable doubt of murder in the first degree.

Our exhaustive review of appellant's arguments, the applicable law and the record leads us to conclude that no reversible error occurred. Accordingly, we affirm the judgment of sentence.