535 A.2d 1120

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey CARR, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 3, 1987.

Filed Dec. 31, 1987.

2

4

Gerald A. Stein, Philadelphia, for appellant.

John J. Burfete, Jr., Norristown, for Com., appellee.

Before CIRILLO, President Judge, and HOFFMAN and HESTER, JJ.

HESTER, Judge:

On June 27, 1985, a jury convicted Jeffrey Carr, appellant, of first degree murder and possessing an instrument of crime. On February 6, 1986, post-trial motions were denied, and the trial court imposed a sentence of life imprisonment on the first degree murder conviction. We reject appellant's sixteen allegations of trial error, and affirm.

The evidence establishes that on November 23, 1974, appellant shot his fifteen-year-old victim, Calvin Dantzler, in the head. That evening, Calvin was at a neighbor's apartment playing cards with the neighbor's three children and several friends. Appellant, then seventeen, and a friend wanted to join the gathering. Calvin refused, and the two had a fist fight in the hallway. Calvin was the victor. A short while later, appellant returned to the apartment complex, commonly referred to as the "projects," and shouted at Calvin, taunting him into another fist fight, which Calvin also won.

Appellant then returned to his apartment, found his pistol, sought out Calvin and shot at him twice. Calvin died of one gunshot wound to the head.

Appellant's June 27, 1985 trial was the second trial of this matter. The first issue we address requires review of the complete history of appellant's court proceedings as well as the law relating to adolescent confessions.

When appellant was arrested for Calvin's murder in the early hours of November 24, 1974, he confessed to the killing. After being advised of his *Miranda* rights, appellant told police about the two fist fights he had with Calvin. He also said that he then "went and got [his] piece and ... went back to the projects." N.T., 6/25/85, at 250. He next admitted that he sought out Calvin, but said he only shot the victim after he saw him reach for a gun. No weapon was found on or near the victim's body.

Following denial of a suppression motion, this confession was admitted at appellant's first trial, which commenced on May 1, 1975. He was convicted of first degree murder,

conspiracy and possession of an instrument of crime. On October 7, 1975, post-trial motions were filed and denied.

On July 17, 1975, the Pennsylvania Supreme Court ruled that an accused under eighteen may not effectively waive his constitutional rights against self-incrimination and to counsel unless provided an opportunity to consult with an adult who is interested in his welfare and who has been advised of the youth's *Miranda* rights. *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975). *McCutchen's* per se exclusionary rule replaced prior law, which analyzed the voluntariness of a juvenile's confession under a totality of the circumstances standard, with weight given to age. This per se exclusionary rule came to be known as the "interested adult" or *McCutchen* rule.

Appellant's prior appellate counsel raised the *McCutchen* issue, and the supreme court, in *Commonwealth v. Carr*, 471 Pa. 86, 369 A.2d 1207 (1977), acknowledged that appellant's incriminating statement should not have been introduced in the 1975 trial since he had not consulted with an informed and interested adult before surrendering his constitutional rights. However, the claim had not been raised in the 1975 post-trial proceedings, and the court determined that it had been waived.

Appellant then filed a petition for post conviction relief, alleging the ineffectiveness of trial counsel for failing to raise the interested adult rule in post-trial motions as well as the ineffectiveness of appellate counsel for failing to raise trial counsel's ineffectiveness for not raising the issue. On August 26, 1983, we granted appellant a new trial on that basis. *Commonwealth v. Carr*, 320 Pa.Super. 1, 466 A.2d 1030 (1983).

The Commonwealth, following denial of en banc reargument on November 8, 1983, appealed the 1983 decision. That appeal was quashed on January 22, 1985. *Commonwealth v. Carr*, 506 Pa. 566, 486 A.2d 1328 (1985).

In the meantime, on April 17, 1984, *McCutchen* was overruled, and the supreme court readopted the rule in effect when appellant's confession was taken. *Common-*

*wealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984). The *Williams* court determined that a per se exclusionary rule was "overly protective and unreasonably paternalistic," and provided "means for juvenile offenders to secure suppression of confessions in fact given in a knowing, intelligent and voluntary manner." *Id.*, 504 Pa. at 520, 475 A.2d at 1287, quoting *Commonwealth v. Christmas*, 502 Pa. 218, 223, 465 A.2d 989, 992 (1983). The court in *Williams* stated that juveniles could be adequately protected against the disadvantages of immaturity in a manner more accommodating to the interests of society and justice. The new test for determining the voluntariness of a juvenile's confession was announced as follows:

> The requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

*Id.*, 504 Pa. at 521, 475 A.2d at 1283.

On February 11, 1985, the supreme court returned appellant's record to the trial court for retrial. At appellant's second suppression hearing, the trial court decided to determine the voluntariness of appellant's confession under "available" law at that time, which was *Williams*. N.T., 6/17/85, at 6. Following the suppression hearing, the trial court determined that the confession was admissible under the *Williams* standard.

Appellant's second allegation of trial error, which is the first issue we address, is that the trial court erred in determining the voluntariness of his confession under the *Williams* standard. Appellant argues that *McCutchen* should have been applied.

8

■ The most recent supreme court decision on application of new constitutional standards is found in *Commonwealth v. Simons*, 514 Pa. 10, 522 A.2d 537 (1987). At issue was the constitutional right against double jeopardy in the context of prosecutorial misconduct. In that context, as in the area of juvenile confessions, the standard of reviewing whether prosecutorial misconduct prohibited retrial on double jeopardy grounds had been changing in a manner unfavorable to criminal defendants.

In *Simons*, the defendant had been convicted of robbery in 1975. He successfully obtained a new trial in 1980 on the basis that the prosecutor had concealed from the jury the terms of a plea agreement between the Commonwealth and a prosecution witness. Simons then moved to dismiss the charges against him, arguing that retrial would violate his double jeopardy rights. The trial court denied the motion, and we affirmed.

At issue was whether the conduct of the prosecutor in the 1975 trial was mere error, or whether it was overreaching, triggering the double jeopardy clause. The standard for determining whether overreaching was present had been subject to different standards of review from 1977 to the time of the *Simons* decision. In *Simons*, the Pennsylvania Supreme Court overruled a 1982 standard for analyzing prosecutorial overreaching. Even though it was announcing a new standard less favorable to criminal defendants, it applied that standard to the case before it. In doing so, the court stated:

Because this case presently is on appeal, [the new] standard of review applies immediately. *The Appellant's right not to be held in double jeopardy, in any event, is not being damaged by this decision because we are describing anew only the present applicable standard of review and the circumstances which will cause double jeopardy to attach but not changing the right itself. The Appellant is getting the benefit of what our law mandates as it is being determined at the time of the appeal.* Double jeopardy, nevertheless, continues to

mean what it has always meant; no new rights were created by [the prior standard of review] nor are they being subtracted by virtue of this analysis. We find a recent analogy for this analysis in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985), where we likewise altered the standard of review in cases involving probable cause for search warrants by adopting the "totality of circumstances" test of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We concluded in *Gray* that "*Gates* did not create any new rights in defendants; it merely changed the analysis of the sufficiency of the probable cause allegation in a search warrant." *Id.*, 509 Pa. at 487–88, 503 A.2d 921. See also, *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984) (per curiam) for a similar analysis. In like manner, we now require new circumstances to satisfy the protection against double jeopardy in cases involving re-trial because of prosecutorial misconduct.

*Id.*, 514 Pa. at 16, 522 A.2d at 541 (emphasis added); *see also Commonwealth v. Bebout*, 335 Pa.Super. 275, 484 A.2d 130 (1984), where we applied the test announced in *Williams* to determine whether a juvenile had knowingly and voluntarily given a confession on May 18, 1981, when *McCutchen* was law. *Williams* was also applied to a 1981 confession in *Commonwealth v. Waters*, 334 Pa.Super. 513, 483 A.2d 855 (1984).

Thus, appellant's right to protection against unknowing or involuntary waiver of constitutional rights before confessing remained inviolate; only the standard of reviewing whether his confession was knowing and voluntary was, temporarily, changed. The trial court was correct in applying the law in effect at the time of the suppression hearing.

The dissent disagrees with retroactive application of the *Williams* rule to this case. However, under the analysis contained in *Simons*, which is the most recent supreme court pronouncement in this area, retroactive application is clearly appropriate.

As we noted in *Commonwealth v. McCormick*, 359 Pa. Super. 461, 519 A.2d 442 (1986), there are several approaches to retroactivity, and the Pennsylvania Supreme Court has utilized all of them recently. Under the common law approach, an appellate court applies the law as it exists at the time it is deciding the case before it. Thus, new law is given full retroactive effect to all cases pending at the time of the decision.

Under this approach, utilized by the supreme court in *Simons* in 1987, *Williams* should be applied to appellant's case. Appellant initiated the uninterrupted process leading to the instant proceedings by way of a PCHA petition requesting relief on the basis of *McCutchen*, and he was granted a new trial. During the pendency of the Commonwealth appeal from our grant of a new trial, *Williams* was decided. Under the common law approach, the rule announced in *Williams* would govern all subsequent proceedings including his retrial and our decision herein since *Williams* is currently the law as we decide this appeal. *See Commonwealth v. McCormick, supra,* 359 Pa.Super. at 472, 519 A.2d at 448.

 Furthermore, we believe a crucial point is that *McCutchen* should never have been applied to appellant's confession in the first instance. The pure common law approach is modified in cases involving collateral proceedings. Under the Pennsylvania Supreme Court decisions in *Commonwealth v. Gillespie*, 512 Pa. 349, 516 A.2d 1180 (1986); *Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986) and *Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983),[1] a new rule of law will not be applied to any case on collateral review. In order to be applied to a defendant, the new decision must be handed down during the pendency of the defendant's direct appeal *and the issue must be properly preserved during that direct appeal.* Appellant did not preserve the *McCutchen* issue during his

1. Unfortunately, these cases were decided after our decision granting retrial in *Commonwealth v. Carr*, 320 Pa.Super. 1, 466 A.2d 1030 (1983).

direct appeal. *Commonwealth v. Carr*, 471 Pa. 86, 369 A.2d 1207 (1977).

Finally, *Williams* is properly given retroactive application in this case under the modified common law rule discussed by the dissent. Under the modified common law rule, a new rule of law has retroactive effect in the absence of constitutional limitations unless the new rule is a clear break with the past. *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). *Simons* and *Gray* confirm that there are no constitutional limitations on retroactive application of *Williams*, and a review of the law regarding juvenile confessions clearly demonstrates that *Williams* was not a break with the past, but merely one in a series of cases changing the rules applicable to juvenile confessions.

In *Commonwealth v. Moses*, 446 Pa. 350, 287 A.2d 131 (1971); and *Commonwealth v. Porter*, 449 Pa. 153, 295 A.2d 311 (1972), a totality of the circumstances test was applied. The *McCutchen* rule evolved out of *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974) and *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975), and had already been modified by *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983), before it was expressly overruled by *Williams*, which reinstated the totality of the circumstances standard in 1984. Thus, *Williams* was not a "clear break" with the past, but the culmination of a long line of cases in a fluctuating area of the law.

A totality of the circumstances standard was the law when appellant, then seventeen and one-half, confessed to this reprehensible murder. He did not request that an adult be contacted. He was informed of his rights, read them himself, and acknowledged that he understood them. He was not mentally impaired. The police did nothing improper under the law in effect in 1974.

We believe *Williams'* logic applies with force:

[U]pon re-examination of the *per se* rule promulgated by *McCutchen*, we believe that protection of juveniles against the innate disadvantages associated with the im-

maturity of most youth may well be achieved in a manner that affords more adequate weight to the interests of society, and of justice, while avoiding *per se* applications of the interested and informed adult rule that serve, in an overly protective and unreasonably paternalistic fashion, to provide means for juvenile offenders to secure suppression of confessions in fact given in a knowing, intelligent and voluntary manner.

*Commonwealth v. Williams,* 504 Pa. at 520, 475 A.2d at 1287, quoting *Commonwealth v. Christmas,* 502 Pa. at 223, 465 A.2d at 992.

█ We now address appellant's remaining fifteen issues. He first argues that he was not retried within the 120 day limit imposed by Pa.R.Crim.P. 1100. Rule 1100 requires trial within 120 days of remand of the record by an appellate court when that court has granted a new trial. The docket in this case indicates that we granted appellant a new trial on August 28, 1983; we denied argument en banc on November 8, 1983; pursuant to a Commonwealth allocatur request, the record was transferred to the Pennsylvania Supreme Court on December 19, 1983; the appeal was quashed by the supreme court on January 22, 1985; and the record was returned to the trial court on February 11, 1985. No "double" requests for reargument appear, as alleged by appellant. Appellant then waived his Rule 1100 rights on June 6, 1985, and the case proceeded to trial within the extension granted. His Rule 1100 claim is, therefore, meritless.

█ Issues seven, nine and thirteen all relate to the fact that appellant's testimony at his first trial was introduced during his retrial. Appellant testified at his first trial that he was not at the projects at the time Calvin was shot, but had fallen asleep in a hoagie shop until after the shooting occurred. This testimony contradicted his confession. The prior testimony was properly admitted at trial under *Commonwealth v. Boyle,* 498 Pa. 486, 447 A.2d 250 (1982), and *Commonwealth v. Ferguson,* 358 Pa.Super. 98, 516 A.2d 1200 (1986), and the prosecutor was properly permitted to

comment on this testimony and its conflict with the confession during his closing argument. Furthermore, this closing commentary cannot be construed as a reference to appellant's failure to testify during his second trial. Issues seven, nine, and thirteen are therefore meritless.

Nine of the remaining eleven allegations of trial error are raised in the context of ineffective assistance of trial counsel by appellant's new, appellate counsel. We will, therefore, dispose of the remaining two claims not raised in that context.

■ Appellant asserts that the trial court improperly failed to redefine intent when asked to do so by the jury during deliberations. This assertion is factually incorrect. While the jury did ask the trial court to redefine intent, the trial court and both trial counsel were concerned over whether the court should recharge on first degree or third degree intent or both. The trial court asked the jury to be more specific as to their difficulty. The jury withdrew the question. Nothing improper occurred.

■ Appellant also contends that the verdict should be struck inasmuch as one of the jurors contacted defense counsel after trial and said that he was pressured by the other jurors into rendering his decision. However, once the jury is polled and the verdict is recorded, the process by which the verdict is reached is not subject to impeachment. *Commonwealth v. Fowler*, 362 Pa.Super. 81, 523 A.2d 784 (1987); *cf. Commonwealth v. Williams*, 514 Pa. 62, 522 A.2d 1058 (1987). Since jurors are incompetent to testify regarding their deliberations, the trial court properly refused to hear the juror's testimony which was offered to impeach the verdict.

Appellant raises numerous allegations of trial counsel's ineffectiveness. Our standard for reviewing the effectiveness of counsel is well established.

When reviewing the effectiveness of counsel, we determine first whether the underlying claim has merit. If it does, we then ask whether counsel's handling of the

matter had some reasonable basis designed to effectuate his client's interests. Counsel is not ineffective unless there was no reasonable basis for the action, and counsel may not be faulted for failing to take baseless or meritless action. Finally, a finding of ineffectiveness requires a showing that the course of action pursued by counsel was prejudicial to the defendant.

*Commonwealth v. Blagman,* 350 Pa.Super. 367, 371, 504 A.2d 883, 885 (1986) (citations omitted); *see also Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Buehl,* 510 Pa. 363, 378, 508 A.2d 1167, 1174 (1986). Furthermore, appellant carries the burden of proving his counsel's ineffectiveness. *Commonwealth v. Durah–El,* 344 Pa.Super. 511, 496 A.2d 1222 (1985).

■ Appellant argues that trial counsel was ineffective for failing to object to a passing reference to appellant's "criminal abstract" by one of the Commonwealth's witnesses. We are not convinced that this inevitably implied prior criminal activity on appellant's part as is required by *Commonwealth v. Griffin,* 357 Pa.Super. 308, 515 A.2d 1382 (1986), in order to warrant a new trial. Further, references to prior criminal activity do not result in a new trial unless prejudice is demonstrated, *Commonwealth v. Nichols,* 485 Pa. 1, 400 A.2d 1281 (1979); *Commonwealth v. Thomas,* 361 Pa.Super. 1, 521 A.2d 442 (1987), and this reference does not approach a prejudicial level. Therefore, appellant's underlying claim is meritless, and trial counsel was not ineffective for failing to object to the testimony.

■ Appellant next argues that trial counsel was ineffective for failing to object to the prosecutor's opening statement that "fifty" witnesses saw the two fist fights between appellant and his victim, when, in fact, considerably fewer than fifty witnesses testified about the fights. Improper remark in opening argument is not a basis for relief unless the unavoidable effect is to so prejudice the jury as to render it incapable of objective judgment. *Commonwealth v. Colson,* 507 Pa. 440, 490 A.2d 811 (1985). This comment does not approach that level of prejudice, and the claim is

meritless. Trial counsel was, therefore, not ineffective for failing to object.

Two of appellant's claims concern trial counsel's failure to object to introduction of two photographs: one of the blood-stained alley where Calvin was shot, and one of Calvin which shows him in peaceful repose. Both were black and white; Calvin, as pictured, is not bloody; and his wounds do not appear. The photographs were admissible under *Commonwealth v. Garcia,* 505 Pa. 304, 479 A.2d 473 (1984); *Commonwealth v. Truesdale,* 502 Pa. 94, 465 A.2d 606 (1983); *Commonwealth v. Howard,* 358 Pa.Super. 259, 517 A.2d 192 (1986); and *Commonwealth v. Fields,* 317 Pa.Super. 387, 464 A.2d 375 (1983). As this claim is meritless, trial counsel was not ineffective for failing to object to their introduction.

Next, appellant charges trial counsel with ineffectiveness for failing to object to the trial court's jury instructions on involuntary manslaughter and provocation. It is axiomatic that we read and review the court's charge in its entirety. *Commonwealth v. Tolassi,* 489 Pa. 41, 413 A.2d 1003 (1980). The general effect of the charge controls and isolated remarks are not grounds for reversal. *Commonwealth v. Saksek,* 361 Pa.Super. 173, 522 A.2d 70 (1987); *Commonwealth v. Alvin,* 357 Pa.Super. 509, 516 A.2d 376 (1986). Our review of the trial court's charge on provocation and involuntary manslaughter convinces us that it accurately and fairly described the law. Trial counsel was not ineffective for failing to object to it.

Appellant also asserts that trial counsel was ineffective for failing to explain the legal term "specific intent" to his expert witness. At trial, appellant offered expert testimony on his inability to form the specific intent to commit first degree murder in light of his ingestion of drugs and alcohol. Although the expert testified extensively about appellant's diminished ability to control himself due to his ingestion of drugs and alcohol, he hedged when asked if

appellant had the specific intent to kill, stating he did not understand the legal term.

Appellant now argues that trial counsel was ineffective for not preparing the witness to answer this question. Psychiatric testimony on legal intent, however, cannot extend to testimony as to whether the defendant had the specific intent to kill within the legal meaning of the term. *Commonwealth v. Terry*, 513 Pa. 381, 398, 521 A.2d 398, 408 (1987); *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344 (1982). This is the jury's province. Trial counsel was thus not ineffective for failing to prepare the expert on a subject about which he was incompetent to testify.

■ Trial counsel is also accused of ineffectiveness for failing to object to the procedure used to refresh three witnesses' recollection of the 1974 events. This claim is meritless as each of the three witnesses had his memory properly refreshed when, after he was unable to remember the answer to the question asked, he reviewed his prior statement, stated that it refreshed his memory, and proceeded to testify. *See Commonwealth v. Proctor*, 253 Pa.Super. 369, 385 A.2d 383 (1978); *see also Dean Witter Reynolds, Inc. v. Genteel*, 346 Pa.Super. 336, 499 A.2d 637 (1985); N.T., 6/24/85, at 57–58; and N.T., 6/25/85, at 126–27, 236–37.

■ Appellant's fifteenth argument is frivolous. He asserts that counsel was ineffective for failing to object to certain testimony as hearsay. As the challenged testimony was not offered for the truth of the matter asserted therein, it was not hearsay. Counsel was not ineffective for failing to object to the admissible testimony.

■ Finally, trial counsel was not ineffective for failing to request that the jury be instructed on "unreasonable belief killing justifiable" voluntary manslaughter. *See* 18 Pa.C.S. § 2503(b). The jury was charged only on "provocation" voluntary manslaughter. *See* 18 Pa.C.S. § 2503(a). A charge under section 2503(b) should be given only where the evidence would reasonably support such a verdict. *Com-*

*monwealth v. Carter*, 502 Pa. 433, 444, 466 A.2d 1328, 1333 (1983); *Commonwealth v. Mays*, 361 Pa.Super. 554, 523 A.2d 357 (1987). Here, no such evidence was introduced. Appellant did not testify in this trial, and had testified previously that he was not present at the shooting. Further, his confession, coupled with the fact that no weapon was found on the victim, belies this theory of defense. Since the charge was not warranted, counsel cannot be deemed to be ineffective for failing to request it.

Judgment of sentence affirmed.

HOFFMAN, J., concurs and dissents with an opinion.

HOFFMAN, Judge, concurring and dissenting:

I concur in the majority's disposition of appellant's Rule 1100 issue. I dissent, however, from the determination that the lower court properly applied the *Williams* standard in ruling on the admissibility of appellant's confession. Accordingly, I would reverse the judgment of sentence and remand the case to the lower court for a new trial. Because I would remand the case for a new trial, I would find it unnecessary to address appellant's remaining issues.

Appellant contends that the lower court erred in giving retroactive effect to the standard announced in *Commonwealth v. Williams*, 504 Pa. 511, 475 A.2d 1283 (1984). Appellant notes that *Williams* was announced after appellant's case "was originally completed." Appellant's Brief at 13. Appellant argues that the trial court should have applied the "interested adult rule," as this Court ordered when the case was last here. *See Commonwealth v. Carr*, 320 Pa. Superior Ct. 1, 9, 466 A.2d 1030, 1034–35 (1983) (Opinion by Cirillo, J.). In analyzing the propriety of retroactive application of a new decision, our courts have utilized two main approaches: the common law rule and the modified common law rule. *See Commonwealth v. McCormick*, 359 Pa. Superior Ct. 461, 470–73, 519 A.2d 442,

18

447–50 (1986).[1] For reasons that follow, I would find that under either test, the *Williams* standard was improperly applied.

The policy underlying the common law rule is that " 'it is unfair to litigants whose case is not yet final to subject them to a law that is now recognized as offensive. Evenhanded decisionmaking requires that similarly situated individuals on direct appeal be treated the same.' " *Commonwealth v. Brown*, 494 Pa. 380, 385, 431 A.2d 905, 908 (1981) (quoting *Commonwealth v. Hill*, 492 Pa. 100, 115, 422 A.2d 491, 499 (1980) (Opinion in Support of Reversal, Roberts, J.)). The common law approach thus requires that

> where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

*Commonwealth v. Melilli*, 361 Pa.Superior Ct. 429, 435, 522 A.2d 1107, 1110 (1987) (quoting *Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983)); *accord Commonwealth v. Carr*, 320 Pa. Superior Ct. 1, 9, 466 A.2d 1030, 1034 (1983) (Opinion by Cirillo, J., now P.J.). The main focus of the common law approach is the timing of the

1. In some cases in which the new rule would otherwise have been given retroactive effect, our courts have employed a second tier of analysis, known as "selective retroactivity" *See Commonwealth v. McCormick*, 359 Pa. Superior Ct. 461, 471, 519 A.2d 442, 447 (1986). *See, e.g., Commonwealth v. McFeely*, 509 Pa. 394, 502 A.2d 167 (1985) (court declined to apply retroactively new rule invalidating warrantless searches in home, absent exigent circumstances, even though rule was announced after appellant was arrested and *before he went to trial*); *Commonwealth v. Miller*, 490 Pa. 457, 417 A.2d 128 (1980) (same). *But see Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986) (Concurring Opinion by Papadakos, J.) (even though new rule was announced more than six years after appellant's sentences were final, and was held to be non-retroactive, Justice Papadakos discussed selective retroactivity approach, and concluded that new rule also would not be retroactive under that approach). Because of my conclusion that *Williams* is not entitled to retroactive effect under the common law rule and the modified common law rule, I need not decide what the result would be under the selective retroactivity approach.

announcement of the new rule. Our courts consistently have held that the new rule will apply if it is announced at any time "up to and including and direct appeal" of the case *sub judice*. *See, e.g., Commonwealth v. Cabeza*, 503 Pa. 228, 469 A.2d 146 (1983); *Commonwealth v. Brown, supra; Commonwealth v. Melilli, supra; cf. Commonwealth v. McCloud*, 477 Pa. 207, 383 A.2d 896 (1978) (new rule applies to case on appeal *nunc pro tunc*). Conversely, "a new rule of law to which we give full retroactive effect, *will not be applied to any case on collateral review unless that decision was handed down during the pendency of appellant's direct appeal and the issue was properly preserved there.*" *Commonwealth v. Gillespie*, 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986) (emphasis added); *see also Commonwealth v. Harper*, 512 Pa. 155, 516 A.2d 319 (1986) (per curiam); *Commonwealth v. Green*, 365 Pa.Superior Ct. 142, 146, 529 A.2d 13, 15 (1987).

In the present case, the result of the application of the common law rule is that the *Williams* standard should not have been given retroactive effect by the lower court. The decision in *Commonwealth v. Williams* was announced on April 17, 1984, while the present case was pending before our Supreme Court on a *collateral appeal*, under the Post–Conviction Hearing Act. *See Commonwealth v. Green, supra*. Because *Williams* was not decided during the period "up to and including" the direct appeal in the present case,[2] it was improperly applied here.

The second approach, the modified common law rule, creates an exception to the common law rule and requires that "where the new rule is a 'clear break with the past' or where there are constitutional limitations," the new rule does not have retroactive effect *Commonwealth v. McCormick, supra*, 359 Pa.Super.Ct. at 470, 519 A.2d at 447; *see, e.g., Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985) (constitutional issue); *Commonwealth v. Ges-*

---

**2.** Appellant filed his direct appeal on October 15, 1975, and our Supreme Court announced its decision in the case on February 28, 1977, or more than seven years before the decision was rendered in *Commonwealth v. Williams.*

*chwendt,* 500 Pa. 120, 454 A.2d 991 (1982) (plurality) (clear break with the past). The United States Supreme Court has defined the phrase, "clear break with the past", as a ruling that

> caused 'such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one.' Such a break has been recognized only when a decision explicitly overrules a past precedent of this Court, or disapproves a practice this Court argu-ably has sanctioned in prior cases, or overturns, a long-standing and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved.

*United States v. Johnson,* 457 U.S. 537, 551, 102 S.Ct. 2579, 2588, 73 L.Ed.2d 202 (1982) (citations omitted) (quoted in *Commonwealth v. Geschwendt,* 500 Pa. 120, 130 n. 5, 454 A.2d 991, 997 n. 5 (1982) (plurality)).

Here, the decision in *Commonwealth v. Williams,* does represent a "clear break with the past" in that our Supreme Court expressly disavowed a prior practice:

> We now reject the application of a rebuttable presump-tion that a juvenile is incompetent to waive his constitu-tional rights without first having an opportunity to con-sult with an interested or informed adult. The presump-tion adopted in *Christmas* serves no useful analytical purpose. The so-called presumption is not a presumption at all since it merely verifies the Commonwealth's estab-lished burden of proving a knowing, intelligent and volun-tary waiver on the part of a juvenile.

*Commonwealth v. Williams, supra,* 504 Pa. at 521, 475 A.2d at 1287–88. Consequently, I would hold under the modified common law approach, *Williams* should not have been applied to the case at bar. *See Commonwealth v. Geschwendt, supra.*

Finally, the interested adult rule, as articulated in *Com-monwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669, *cert denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975), requires that

an accused under 18 years of age may not effectively waive his constitutional rights against self incrimination and the right to counsel without an opportunity to consult with an attorney or an adult, interested in the welfare of the juvenile suspect.

*Commonwealth v. Carr*, 320 Superior Ct. 1, 7–8, 466 A.2d 1030, 1033–34 (1983) (Opinion by Cirillo, J., now P.J.). In this case, appellant was not permitted to consult with an interested adult, and therefore under this *per se* rule, his confession should have been suppressed.

For the foregoing reasons,[3] I would hold that the confession should be suppressed, and I would remand the case for a new trial.

---

**3.** To reiterate, I believe that the order from this Court, *see Commonwealth v. Carr*, 320 Pa.Superior Ct. 1, 466 A.2d 1030 (1983) (Cirillo, J., now P.J.), granting a new trial to appellant and instructing the lower court to apply the *McCutchen* rule in this case, should have been followed.