523 A.2d 784

COMMONWEALTH of Pennsylvania, Appellee,

v.

Thomas FOWLER, Appellant.

Superior Court of Pennsylvania.

Submitted Oct. 20, 1986.

Filed April 2, 1987.

82

Sandra F. Zavodnick, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge:

Thomas Fowler was tried by jury and was found guilty of attempted rape, attempted involuntary deviate sexual intercourse, robbery, theft by unlawful taking, simple assault and possession of an instrument of crime. Post-verdict motions were denied, and Fowler was sentenced to serve a term of imprisonment for not less than three and one-half years nor more than ten years. On direct appeal, he contends that the trial court erred by denying a request for a mistrial when, during the polling of the jury after a verdict had been returned, it was discovered that a juror had observed portions of a fictional television show pertaining to rape. Fowler also contends that trial counsel was ineffective because he refused to permit him to testify in his own behalf. We find no merit in these contentions and affirm the judgment of sentence.

The victim, according to the Commonwealth's evidence, was accosted on a public street at 5:00 a.m. and was forced into an enclosed school yard where she was assaulted physically and sexually at knife point. When, after approximately two hours, the victim was able to seize the knife, her assailant took a plastic bag, in which the victim had been

carrying personal items, and fled. The principal issue at trial was whether Fowler had been the assailant.

The jury began its deliberations at or about 2:00 p.m. on October 30, 1985. When, at 5:07 p.m., the jury had not reached a verdict, the trial court permitted the members of the jury to disperse with instructions that they should not discuss the case with anyone and to return on the following day. On October 31, 1985, the jury deliberated from 9:15 a.m. until 11:15 a.m., when a verdict of guilty was returned. The jury was polled, and all members indicated agreement with the announced verdict. Thereafter, but before the jurors had been discharged, defense counsel requested the trial court to poll the jurors regarding the possible influence of an episode of the television series entitled "Hotel" which, on the prior evening, had depicted the circumstances of a fictional rape. The trial judge initially denied the request, then relented, changed his mind and conducted an individual poll of the jurors. This revealed that one juror had seen the television show, and that he had seen only "the tail end of it." When asked further if it had had an impact on his deliberations, he responded, "I don't think so." The trial court then directed that the verdict be recorded. However, defense counsel proceeded to cross-examine the juror without objection by the prosecuting attorney and without interruption by the court. Although the juror continued to say that he did not think the television production had affected his deliberations, he finally conceded, in response to a leading question posed by defense counsel, that he could not be certain. The juror was then taken into the judge's chambers and, after being individually instructed in the presence of counsel, assured the court that he could follow the court's instructions and reach a decision based solely on the evidence produced during trial. The court then directed the jury to retire once again and resume deliberations. At this point, defense counsel moved for a mistrial, which the court denied. Twenty-five minutes later, at 11:55 a.m., the jury sent a note to the trial judge to the effect that they could not "reach a verdict with total agreement." The jurors were asked to continue deliberating. At 2:50 p.m., a

note to the trial judge, signed by the foreman, again suggested an inability to reach a unanimous agreement. The trial court instructed the jury consistently with *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971), and asked the jury to continue its deliberations. At 3:55 p.m., a third note to the trial judge suggested that further deliberations would not break the impasse. The trial court thereafter excused the jurors for the day and permitted them to disperse until the following morning. A verdict of guilty on all charges was returned at 10:59 a.m. on November 1, 1985.

█ The proceedings following the initial return of a verdict were ill-advised. This is patently clear. The ABA Standards pertaining to Trial by Jury, at § 5.7(a), direct that "[u]pon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined." This is consistent with the well-settled principle of public policy in this Commonwealth that "post-trial affidavits and evidence of jurors elicited by the examination of counsel or by a litigant for the purpose of ... impeaching the verdict are improper, and such practice is to be discouraged." 38 P.L.E. Trial § 397. See: *Commonwealth v. Pierce*, 453 Pa. 319, 309 A.2d 371 (1973). "Little will be gained and much lost by such inquiries." *Commonwealth v. Zlatovich*, 440 Pa. 388, 396, 269 A.2d 469, 473 (1970).

█ It was improper for the trial court, following the polling of the jurors, to interrogate an individual juror regarding the mental processes by which he had reasoned and then permit the juror to be cross-examined by defense counsel. This error was compounded when the trial court thereafter directed the members of the jury to resume their deliberations. A valid, unanimous verdict had been returned by the jury, and there was no good reason for requiring the jurors to renew their deliberations after the verdict had been received and the jurors polled. Neither party had requested further deliberations. The Commonwealth had objected to the trial court's refusal to accept the

verdict, and the defense had moved for a mistrial. Nevertheless, after much further deliberation and three notes suggesting inability to agree, the jury returned a verdict identical to that initially returned.

■ If the intervening proceedings were redundant and ill-advised, appellant is, nevertheless, hard pressed to show harm. It was the defendant, not the Commonwealth, who improperly attempted to impeach the jury's verdict by cross-examining one of the jurors concerning the possible effect of extra-evidentiary influences. Although the initial verdict was unanimous and should have been recorded, it was the defense which importuned the trial court to take further steps to insure the impartiality of the jury's deliberations and the sanctity of its verdict. The trial court denied a defense motion for mistrial, a result which the defendant clearly was not entitled to receive, and when the trial court improvidently required the jury to deliberate further even after a proper verdict had once been returned, the subsequent deliberations resulted in a confirmation of the initial verdict. Thus, even if the additional deliberations were unnecessary and redundant, there was no harm to the defendant, for further deliberations did not alter the unanimous verdict which the jury had previously announced.

■ Following trial, present counsel was appointed to represent Fowler and filed post-trial motions. Included in these post-trial motions was an averment that trial counsel had been ineffective for failing to permit Fowler to testify in his own behalf at trial. An evidentiary hearing was held, and at this hearing testimony was received from both Fowler and his trial counsel. This evidence disclosed, and the court found as fact, that although counsel had recommended that Fowler should not testify, the final decision not to testify had been made by Fowler. The court found that counsel's recommendation had been reasonable and that Fowler's testimony, if he had testified, would have been "confused and less than credible." Trial Court Opinion at p. 12. Therefore, the trial court concluded, no basis existed for finding that counsel had rendered constitutionally ineffective assistance. We agree.

■ The decision whether to testify in one's own behalf is ultimately to be made by the accused after full consultation with counsel. *Commonwealth v. Rawles*, 501 Pa. 514, 523 n. 3, 462 A.2d 619, 624 n. 3 (1983); *Commonwealth v. Wallace*, 347 Pa.Super. 248, 254, 500 A.2d 816, 819 (1985); *Commonwealth v. Mancini*, 340 Pa.Super. 592, 607, 490 A.2d 1377, 1385 (1985). In order to support a claim that counsel was ineffective for not "putting" the appellant on the witness stand, the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) he gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf. Cf. *Commonwealth v. Martin*, 346 Pa.Super. 129, 142, 499 A.2d 344, 351 (1985) (decision to testify was ultimately and solely the defendant's, and strategic errors, without specific incidents of counsel impropriety, were insufficient to find trial counsel ineffective). In the instant case, the evidence failed to show that trial counsel had interfered with appellant's freedom to testify or that counsel's advice had been unreasonable. Therefore, appellant "must bear the burden of his decision not to testify and [he] cannot shift the blame to his attorney." *Commonwealth v. Mancini, supra* 340 Pa.Super. at 610, 490 A.2d at 1385. See: *Commonwealth v. Wallace, supra.*

Appellant's final contention is that the sentencing court erred when it denied his motion to reconsider the sentence without a hearing. He argues that he should have been given the opportunity to present evidence which, allegedly, was not available to the court at the sentencing hearing. This information included his home environment, his juvenile history and background, and his abuse of alcohol.

Appellant's argument is not supported factually or legally. The record discloses that the sentencing court had the benefit of a pre-sentence report and a mental health evaluation. Moreover, appellant's alcohol problem and his treatment therefor were specifically called to the attention of the sentencing court.

■ The law is clear that a sentencing court may deny a petition to modify sentence without a hearing and without

stating reasons for its denial. *Commonwealth v. Ziomek,* 291 Pa.Super. 251, 435 A.2d 894 (1981). "A petition for modification of sentence is designed to give the sentencing court an opportunity, before appellate review is undertaken, to correct any errors it may have committed at sentencing.... A modification of sentence hearing, therefore, is only necessary if the sentencing record discloses error by the trial court. Should the modification petition fail to raise such errors, then the trial court is under no obligation to hold an obviously frivolous hearing or write an unnecessary opinion supporting its denial of the modification petition. It is within the trial court's discretion to rely upon the sentencing record." *Id.,* 291 Pa.Superior Ct. at 254–255, 435 A.2d at 896.

■ The sentence imposed by the court in the instant case was within the range of sentences recommended by the sentencing guidelines, and appellant does not contend otherwise. Indeed, appellant is hard put to demonstrate any abuse of discretion; and our own review of the record discloses none. Because the record discloses neither defect in the sentencing process nor abuse of the sentencing court's discretion, it was not error to deny appellant's modification petition without hearing.

The judgment of sentence is affirmed.