## Glass v. Cooper

*Nancy G. Rhoads* and *Stephen Sheller,* for plaintiffs.
*James L. Griffith,* for defendant.

FREEDBERG, *P.J.,* and HOGAN and McFAD-DEN, *J.J.,* July 31, 1991—This matter concerns a medical malpractice case, currently before the court on an issue of post-trial conduct of counsel. It was tried before the Honorable James C. Hogan during the week of May 13, 1991. The jury returned a verdict in favor of the defense. Post-verdict motions have been filed by plaintiffs. At the request of the trial judge, a court en banc consisting of three judges has been appointed to dispose of all post-trial matters.

During a post-trial hearing before Judge Hogan, it was revealed that Jamie Sheller, an attorney who served as trial assistant to plaintiff's counsel, Nancy Rhoads, has contacted the jurors who rendered the verdict in favor of the defense by submitting a series of written questions, a copy of which is attached to this opinion as an exhibit. Ms. Rhoads confirmed at record conference that the questionnaire accompanying the letter on her firm's letterhead was sent to all the jurors. In preliminary instructions, the questionnaire advises the juror is not required to answer

the questions. The questions include inquiry about the jury's credibility determinations regarding numerous witnesses. Specifically there is a request that the jurors disclose which witnesses were believed; the nature of their first impressions; when they arrived at their first impressions, when the first impressions changed and the reasons their first impressions changed. There are questions asking the jurors' voter registration, opinion on abortion, and whether the judge's attitude or actions towards any of the parties affected the jurors' "impressions".[1] Also included was a general question to the jurors asking them whether they had any unanswered questions about issues, witnesses, et cetera, and encouraging them to list the questions and

---

1. The question about the judge is apparently designed to buttress a post-verdict attack upon the trial judge on the basis that he should have recused himself because he knew the father-in-law of the defendant and had represented the father-in-law of the defendant years before. The trial judge disclosed this matter to counsel on the record prior to the commencement of the first trial. Upon learning of the trial judge's representation of the father-in-law, both counsel agreed that it presented no problem, that the father-in-law played no part in the case and that the trial judge should continue to preside over the case. On defendant's motion, the trial judge declared a mistrial before the first jury, when plaintiff testified that the defendant told a story in *Voice* magazine of how he was a drug user and he was arrested for international drug dealing. Before beginning trial, the parties had agreed that media accounts of extra-medical activity of the doctor would not be addressed. Upon entry of the mistrial, plaintiff's counsel for the first time urged the trial judge to recuse because he knew the father-in-law. No formal disqualification motion was filed by plaintiff's counsel. The trial judge refused to recuse. The case subsequently went to trial before a second jury and resulted in a defense verdict.

Rhoads has filed an action in Philadelphia under the name of *Glass v. Cooper* in which she has scheduled a deposition of the father-in-law, also a medical doctor. The trial judge de-

inviting the jurors to contact Sheller so that she could discuss the case with them.

A judge has an "inherent power to control litigation over which he is presiding" and may act where the facts warrant it. *Slater v. Rimar Inc.*, 462 Pa. 138, 149, 338 A.2d 584, 589 (1975). We conclude that counsel's conduct in attempting to learn the thought processes of the jury after the verdict is violative of long-established public policy in the Commonwealth of Pennsylvania and should be enjoined.

The Act of 1980, June 26, P.L. 266, No. 78, section 3, 42 Pa.C.S. §4562 provides:

"Except where jury tampering is being investigated by the proper authorities, a juror shall not be required to answer to any person concerning the manner in which the jury reached its verdict. . . ."

The U.S. Supreme Court as long ago as *McDonald v. Pless*, 238 U.S. 264 (1915), condemned the practice of post-trial interviews of jurors, stating:

"Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigations; to the destruction of all frankness and freedom of discussion and conference." *McDonald* at 267-8.

Pennsylvania appellate courts have emphatically rejected the practice of post-verdict interviews of jurors. Thus, in *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861 (1960), our Supreme Court stated:

clined to act upon defendant Cooper's attempt to enjoin the Philadelphia deposition. Rhoads seeks in the Philadelphia discovery to learn from the father-in-law the extent of the trial judge's representation of the father-in-law, and the father-in-law's medical treatment of the trial judge and the trial judge's family.

"The practice of interviewing jurors after a verdict and obtaining from them ex parte, unsworn statements in answer to undisclosed questions and representations by the interviewers is highly unethical and improper and was long ago condemned by this court in *Cluggage's Lessee v. Swan,* 4 Binn. 150, 158 (1811), *reiterated and reaffirmed* in *Friedman v. Ralph Brothers Inc.,* 314 Pa. 247, 171 A. 900 (1934), and again quoted from in length in *Redmond v. Pittsburgh Railways Company,* 329 Pa. 302, 198 A. 71 (1938). It is forbidden by public policy: *Commonwealth v. Greevy,* 271 Pa. 95, 114 A. 511 (1921)."

The Superior Court of Pennsylvania has very recently stated that *"Kravitz* plainly states that obtaining statements from jurors ex parte is 'highly unethical and improper.'"* Oblon v. The Ludlow-Fourth Corp., et al.,* 406 Pa. Super. 591, 595 A.2d 62 (1991).

In *Commonwealth v. Fowler,* 362 Pa. Super. 81, 523 A.2d 784 (1987), the Superior Court cited the A.B.A. Standards Pertaining to Trial by Jury at section 5.7(a) that "upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined." The *Fowler* court noted that this is "consistent with the well-settled principle of public policy in this Commonwealth that 'post-trial affidavits and evidence of jurors elicited by the examination of counsel or by a litigant for the purpose of . . . impeaching the verdict are improper, and such practice is to be discouraged.'" 38 P.L.E. Trial, §397. *See Commonwealth v. Pierce,* 453 Pa. 319, 309 A.2d 371 (1973). "Little will be gained and much lost by such inquiries." *Commonwealth v. Zlatovitch,* 440 Pa. 388, 269 A.2d 469 (1970).

In *Fowler*, it was held to be improper for the trial judge, following the polling of jurors, to interrogate an individual juror regarding the mental processes by which he had reasoned, and then permit the juror to be cross-examined by defense counsel. See also *Carter v. United States Steel Corp.*, 390 Pa. Super. 265, 568 A.2d 646 (1990), and the concurring and dissenting opinion that follows.

The sole permissible inquiry is to determine the narrow question of whether extraneous influences might have affected the jury during their deliberations. *Fink v. Commonwealth*, 85 Pa. Commw. 290, 482 A.2d 281 (1984).[2] Thus it is permissible to inquire whether the jury learned of some extraneous fact, such as media reports or conversations with outsiders. However, the effect of such outside influences on the deliberative processes may not be the subject of inquiry. *Carter v. United States Steel, supra; Commonwealth v. Fowler, supra.* See also *McCann v. Hedin*, 3 Bucks L. Rep. 118 (1953). The proper treatment of a verdict rendered where jurors have learned off-the-record facts is to order a new trial where the extraneous information leads the court to conclude that the jury might have been prejudiced by improper information. *Carter v. United States Steel Corp., supra.* The jury process is deemed inviolable, and for the protection of jurors and the litigants, discussion of the deliberative process impedes the effective termination of cases in accordance with due process of law. *Carter, supra.*

By submitting the questions to the jury and by soliciting them to call her to discuss the case, plaintiff's counsel has done and is doing precisely that which has been condemned by the U.S. Supreme Court and all the appellate courts of Pennsyl-

---

2. The instant post-trial motions do not allege the jury's verdict was tainted by extraneous influences, nor do the jury questions posed seek such information.

vania. She is violating the sanctity of the jury deliberating room. Her efforts will only lead to information inadmissible in any subsequent proceeding. Further, jurors, having performed a civic duty, should not be called upon to account for their decisions by anyone, especially the litigants and counsel; nor should they be called upon to divulge discussion occurring within the jury room; and finally, they should be secure in knowing their individual discussion will not be revealed by other jurors through improper processes. Plaintiffs' attorneys may not do that which trial judges have been forbidden to do by the Superior Court of Pennsylvania in the *Carter* and *Fowler* cases, *supra*. For this reason we enter the following

## ORDER OF THE COURT EN BANC

And now, July 31, 1991, it is hereby ordered, adjudged and decreed that neither plaintiffs nor their counsel shall have further contact with the jurors; nor shall they make further inquiry of the jurors as to their deliberative processes, nor employ or disseminate any information which they may have gained through ex parte jury inquiry. The court administrator of Northampton County shall contact the jurors in this case and advise them that the court directs them not to respond to the questions set forth in exhibit A.

## EXHIBIT A

Re: Glass v. Cooper
Trial 1986-C-3643

Dear _____:
Enclosed please find a juror questionnaire with regard to the above trial on which you recently served on the jury. I would appreciate it if you

would complete the questionnaire and return it to me in the enclosed stamped, self-addressed envelope.

If you have any questions concerning this, please feel free to contact me.

Thank you for your anticipated assistance.

Very truly yours,

Jamie L. Sheller

## JUROR QUESTIONNAIRE

(Please feel free to add comments to any answer or to refuse to answer any questions.)

Name _____

1. Have you ever served on a jury before?

If so, was it a criminal case/civil case?

If a civil case, please indicate the following:

—Type of case (auto accident, medical malpractice, etc.)

—What damages alleged

—Verdict rendered (for plaintiff/defendant)

—In what amount

2. Did you believe (please comment on) the testimony of:

a. Georgette Glass? (comments)

b. Dr. William Cooper? (comments)

c. Defendant Marshall Klavan? (defendant's medical expert) (comments)

d. Dr. Gregory Lang? (plaintiff's medical expert) (comments)

e. Linda Romig? (ex-patient of Dr. Cooper) (comments)

f. Mona Chapman? (ex-patient of Dr. Cooper) (comments)

g. Cathy Shapter? (ex-patient of Dr. Cooper) (comments)

h. Dr. Julian Slowinski? (plaintiff's psychological expert) (comments)

i. Mary Christian? (defendant's nurse) (comments)

j. Stella Franklin? (defendant's nurse) (comments)

3. Were your *first* impressions of the case that
—Defendant Cooper was negligent
—Defendant Cooper was not negligent

4. When did you arrive at your first (initial) impressions?
—During or after jury selection
—During or after opening statements
—During or after the testimony of a witness (which witness?)
—During or after closing arguments
—During or after the charge to the jury

5. Did you know any of the parties or the judge? (Yes/No)

6. Did the judge's attitude or actions towards any of the parties affect your impressions? (Yes/No) If so, please describe who was involved and what occurred.

7. Why did you arrive at your *first* impressions?

8. At any time during the trial did your *first* impressions change? If so, when:
—During or after jury selection
—During or after opening statements
—During or after the testimony of a witness (which witness?)
—During or after closing arguments
—During or after the charge to the jury
—During jury deliberations. If so, how and why did they change? (comments please)

9. On the issue of abortion are you Pro Life/Pro Choice? Did your feelings on this issue influence you at *anytime* during the trial? If so, in what way?

10. Do you consider yourself ideologically;
—very conservative

—conservative
—moderate
—liberal
—very liberal

11. Are you a registered
—Republican
—Democrat
—Independent

12. Were you aware that plaintiff would not actually receive the money you awarded unless defendant Cooper was found negligent? (Yes/No)

13. Did you give this issue any thought? (Yes/No)

14. Did you have many unanswered questions about issues, witnesses, etc.? (I am sure you must have.) Please list them below (and indicate if you want me to answer those that I can—or if you would prefer, please feel free to call me to discuss the case).

Thank you very much for your time.